UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

E.R., a resident of Montgomery County, Maryland;

L.C., a resident of Prince George's County, Maryland;

N.Q., a resident of Prince George's County, Maryland;

L.R., a resident of Virginia; and

G.G., a resident of New York;

on behalf of themselves and others similarly situated;[*]

*Plaintiffs*,

v.

MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528-0525;

U.S. DEPARTMENT OF HOMELAND SECURITY,
245 Murray Lane SW
Mail Stop 0485
Washington, DC 20528-0485

Case No. 8:26-cv-03450

**CLASS ACTION COMPLAINT FOR VACATUR, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

[*] A motion for leave for Plaintiffs to waive the requirements under Local Rule 102.2(a) and to proceed under pseudonyms will be filed with the Court promptly following the initiation of this case.

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,
500 12th Street SW
Washington, DC 20536;

U.S. CUSTOMS AND BORDER PROTECTION,
1300 Pennsylvania Avenue NW
Ste 4.4-B
Washington, DC 20229;

DAVID VENTURELLA, in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement,
500 12th Street SW
Washington, DC 20536;

RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection,
1300 Pennsylvania Avenue NW
Ste 4.4-B
Washington, DC 20229;

*Defendants*.

## INTRODUCTION

1. Plaintiffs E.R., L.C., N.Q., L.R., and G.G. (collectively, "Plaintiffs") bring this putative class action to challenge the thousands of dollars of fees the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP") (collectively, "Defendants") are unlawfully imposing as part of their campaign to inflict maximum punishment on noncitizens in the United States. Defendants have stated that the fees at issue in this case are related to "border enforcement," but have nevertheless imposed the fees against Plaintiffs years after they entered the country and hundreds of miles away from the border.

2. Plaintiffs are all in the process of navigating the United States' complex immigration system, including by attending scheduled check-ins with ICE; pursuing potential avenues for immigration relief, like asylum and withholding of removal; and attending their immigration proceedings. Rather than let the normal course of those proceedings play out, Defendants have put their thumb on the scale, assessing thousands of dollars of fees while warning of future collections actions and that nonpayment of the fees may negatively impact future immigration adjudications.

3. Section 100017 of H.R.1, the One Big Beautiful Bill Act ("OBBBA"), Pub. L. No. 119-21, § 100017, 139 Stat. 72, 384–85 (2025) (codified as 8 U.S.C. § 1815 (hereinafter, "Section 1815")), authorizes a $5,000 fee for "any inadmissible [noncitizen][2] at the time such [noncitizen] is apprehended between ports of entry." 8 U.S.C. § 1815(a). Adjusted for inflation, the fee is

[2] This complaint uses the term "noncitizen" as equivalent to the statutory term "alien." *See, e.g.*, *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023) (citing *Nasrallah v. Barr*, 590 U. S. 573, 578 n.2 (2020)).

currently $5,130. *Certain Immigration Enforcement-Related Fees Required by Reconciliation Bill: Fiscal Year 2026 Adjustments for Inflation*, 90 Fed. Reg. 52425 (Nov. 20, 2025).

4. Defendants maintain an unlawful policy and practice of assessing fees under Section 1815 against individuals regardless of the date they entered the United States or the location or date of their apprehension by DHS (the "Fine Everyone Policy").

5. Disregarding the well-established principle that "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires," *Bowen v. Georgetown Univ. Hosp*., 488 U.S. 204, 208 (1988), Defendants assess Section 1815 fees retroactively against noncitizens who entered the U.S. before H.R. 1 was enacted.

6. Defendants fined Plaintiffs under Section 1815 even though Plaintiffs all entered the United States prior to the passage of H.R. 1.

7. Defendants' retroactive application of Section 1815 is supported neither by the text of H.R. 1 nor any other legal authority. Indeed, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). At the time Plaintiffs entered the United States, Section 1815 did not exist; as a result, Plaintiffs could not have known that their conduct would later be punished by a law not yet written, let alone in effect.

8. Moreover, Defendants assess fees against a) noncitizens whom Defendants apprehended in the past and b) noncitizens whom Defendants apprehend not between ports of entry, but rather in the interior of the United States, often long after the noncitizen has entered the United States and established their life here. In either case, Defendants assess fees other than "at the time such [noncitizen] is apprehended between ports of entry," 8 U.S.C. § 1815(a), which is

contrary to the plain text of the statute and arbitrary and capricious, violating the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq*.

9. Defendants also fined Plaintiffs under Section 1815 based on allegations that Plaintiffs "[had] been apprehended by the U.S. Department of Homeland Security between ports of entry," even though Defendants issued fees to Plaintiffs in the interior of the United States—in Maryland, Virginia, and New York—over one thousand miles away from where each had entered the United States at the southern border. In fact, Plaintiffs L.C., L.R., and G.G. were previously apprehended at the southern border and released without Defendants assessing a fee.

10. In sum, Defendants seek to "rewrite clear statutory terms to suit [their] own sense of how the statute should operate." *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 328 (2014).

11. The Court should, therefore, vacate Defendants' policy and practice of assessing fees under Section 1815 against individuals regardless of the date they entered the country and the date and location of apprehension; declare unlawful the retroactive assessment of Section 1815 fees and the assessment of fees against individuals other than at the time they were apprehended between ports of entry; and enjoin Defendants from applying Section 1815 retroactively and against individuals other than at the time of apprehension between ports of entry.

## JURISDICTION AND VENUE

12. This case arises under the APA, 5 U.S.C. §§ 701, *et seq*.

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

14. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because Plaintiffs E.R., L.C., and N.Q. reside in this district and no real property is involved in this action.

15. Pursuant to Local Rule 501, paragraph 4.b.iii, assignment to this Court's Southern Division is proper because E.R. resides in Montgomery County, Maryland, and L.C. and N.Q. reside in Prince George's County, Maryland.

**PARTIES**

16. E.R. resides in Montgomery County, Maryland. He entered the United States through the southern border in 2015. In April 2026, Defendants fined E.R. $5,130 under Section 1815 in Maryland. E.R. disputed the fee, but Defendants have not issued a decision.

17. L.C. resides in Prince George's County, Maryland. She entered the United States through the southern border in 2023. In July 2026, Defendants fined L.C. $5,130 under Section 1815 in Maryland. L.C. disputed the fee, but Defendants have not issued a decision.

18. N.Q. resides in Prince George's County, Maryland. He entered the United States in 2023 through the southern border. In April 2026, Defendants fined N.Q. $5,130 under Section 1815 in Maryland. N.Q. disputed the fee, but Defendants have not issued a decision.

19. L.R. resides in Virginia. He entered the United States in 2022 through the southern border. In January 2026, Defendants fined him $5,130 under Section 1815 when he attended his check-in with ICE in Virginia. L.R. disputed the fee, but Defendants have not issued a decision.

20. G.G. resides in New York. He entered the United States in 2022 through the southern border. In November 2025, Defendants fined him $5,000 under Section 1815 in New York. G.G. disputed the fee, but Defendants denied his appeal and upheld the fee.

21. Defendant Markwayne Mullin is the Secretary of Homeland Security and head of DHS. He is sued in his official capacity.

22. Defendant DHS is a department of the executive branch of the United States government. DHS and its components ICE and CBP are the agencies of the federal government principally charged with coordinating immigration enforcement actions.

23. Defendant ICE is a component of DHS. Among ICE's duties are the administration of fees under Section 1815 and the review of appeals of such penalties.

24. Defendant CBP is a component of DHS. Among CBP's duties are the administration and collection of fees under Section 1815.

25. Defendant David Venturella is the Senior Official Performing the Duties of the Director of ICE. He is sued in his official capacity.

26. Defendant Rodney Scott is the Commissioner of CBP. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

### I. Defendants' Fine Everyone Policy Targets All Noncitizens Who Entered Without Inspection Regardless of Date of Entry or Date or Location of Apprehension.

27. On July 4, 2025, President Donald J. Trump signed H.R. 1, Pub. L. No. 119-21, 139 Stat. 72, into law.

28. Among other things, H.R. 1 created certain fines and fees for noncitizens. One such fee, called the "inadmissible [noncitizen] apprehension fee," is the subject of this lawsuit. That fee is found in Section 100017 of H.R. 1 and is codified as 8 U.S.C. § 1815.

29. That statute states, in relevant part: "In addition to any other fee authorized by law, the Secretary of Homeland Security shall require the payment of a fee, equal to the amount specified in subsection (b), by any inadmissible [noncitizen] at the time such [noncitizen] is apprehended between ports of entry." 8 U.S.C. § 1815(a). Subsection (b) states the amount of the fee "shall be the greater of (A) $5,000; or (B) such amount as the Secretary of Homeland Security may establish, by rule."

30. According to DHS, "The HR-1 fees are meant to cover costs to DHS." *Certain DHS Immigration Enforcement-Related Fees Required by HR-1 Reconciliation Bill*, 90 Fed. Reg. 43223

(Sep. 8, 2025). In the context of Section 1815, the "costs" to be "covered" are those related to "apprehen[sion] between ports of entry." *See* 8 U.S.C. § 1815(a); *cf.* 8 U.S.C. § 1814(a) (noting that fee for arrest of noncitizen with an *in absentia* removal order was to serve as "partial reimbursement for the cost of arresting" the noncitizen). Half of fees collected is credited to ICE and deposited into the Detention and Removal Office Fee Account. 8 U.S.C. § 1815(c)(1). The other half of fees collected is credited to the general fund of the U.S. Department of Treasury. 8 U.S.C. § 1815(c)(2).

31. Approximately two months after the President signed H.R. 1 into law, ICE and DHS issued a notice regarding Section 1815. 90 Fed. Reg. 43223. The notice "announces the imposition and collection of certain new immigration enforcement fees." *Id.* According to the notice, "DHS will individually notify [noncitizens] to whom these fees apply and, upon notification, provide instructions on how to pay the fees levied as of [September 8, 2025]." *Id.* As to Section 1815, the notice states that "[noncitizens] who are apprehended by DHS between ports of entry are often subject to the ground of inadmissibility under INA 212(a)(6), 8 U.S.C. 1182(a)(6)," and may be deemed inadmissible "under INA 212(a)(6), 8 U.S.C. 1182(a)(6), and/or any other grounds of inadmissibility listed under INA 212, 8 U.S.C. 1182." *Id.* at 43223–24.

32. In November 2025, Defendants announced that Section 1815 fees would be increased to $5,130 for fiscal year 2026, effective December 1, 2025. 90 Fed. Reg. 52425.

33. In announcing the inflation-adjusted 2026 rate, Defendants reiterated that the fee "is applicable to [noncitizens] who are inadmissible under INA section 212, 8 U.S.C. 1182, and are apprehended by DHS between ports of entry." *Id.* at 52426. Those individuals, Defendants again noted, "are often subject to the ground of inadmissibility under INA section 212(a)(6), 8

U.S.C. 1182(a)(6)," and "could also be inadmissible based on additional grounds of inadmissibility listed under INA section 212, 8 U.S.C. 1182." *Id.*

34. Neither of the regulatory notices issued by Defendants regarding Section 1815 fees defines any process by which an individual may seek to challenge the assessment of fees. Nor do the notices define any process by which Defendants determine whether an individual is deemed inadmissible and/or subject to fees under Section 1815.

35. In the absence of a defined regulatory process for reviewing fee disputes, Defendants take months to issue a decision. For example, G.G. received a decision on his dispute after roughly five months; L.R.'s dispute has been pending for six months; N.Q.'s dispute has been pending for three months; and E.R.'s dispute has been pending for a month and a half.

36. Even when an individual does dispute the fee, Defendants affirm the fees regardless of the date the individual entered the United States or the location or date of their apprehension by DHS. For example, Defendants affirm Section 1815 fees on the basis that an individual was purportedly "apprehended" in Maryland, Virginia, or New York, regardless of the individual's date of entry or the location or date of their apprehension.

37. Since its enactment, Defendants have applied Section 1815 retroactively and contrary to the plain text of the statute, assessing fees: a) against individuals who entered the country before the enactment of H.R. 1, b) against individuals long after they were apprehended and released, and c) against individuals who were apprehended at locations other than between ports of entry.

38. Defendants maintain an unlawful policy and practice of assessing fees under Section 1815 against individuals regardless of the date they entered the United States or the location or date of their apprehension by DHS (the "Fine Everyone Policy").

39. On September 24, 2025, the official Facebook account for U.S. Border Patrol, a component of Defendant CBP, made the following announcement:

> Introducing the Inadmissible Alien Apprehension Fee- a fee assessed for each apprehension of an amenable alien. Amenable aliens are:
>
> - Any alien 14 years of age or older who illegally entered the United States without being inspected or admitted and is determined to be inadmissible.
> - This fee can be issued to all aliens who illegally entered regardless of processing disposition, location of illegal entry, length of time present in the United States, or current immigration proceedings.
>
> ONE BIG BEAUTIFUL BILL in effect.[3]




[3] U.S. Border Patrol, Facebook, *Introducing the Inadmissible Alien Apprehension Fee—a fee assessed for each apprehension of an amenable alien* (Sep. 24, 2025), https://www.facebook.com/USBorderPatrol/posts/introducing-the-inadmissible-alien-apprehension-fee-a-fee-assessed-for-each-appr/1135655728752649.

40. That same day, the official account for U.S. Border Patrol Del Rio Sector made a similar announcement, stating that the fee under H.R. 1, Section 100017 "applies to any [noncitizen] 14 years of age or older who illegally enters the U.S. without being inspected and is determined to be inadmissible. The fee can be issued to all [noncitizens] who illegally entered the U.S. regardless of processing disposition, location of illegal entry, length of time present in the country, or current immigration proceedings."[4]

41. On September 26, 2025, the official Instagram and Facebook accounts for U.S. Border Patrol announced what it called "NEW DHS GUIDANCE UNDER OBBBA!"[5] The social media posts were accompanied by a video of President Trump, in which he stated: "Once we started detaining and deporting everyone who crossed the border . . . they simply stopped coming. They're not coming anymore."[6]

42. The "guidance" provided in the September 26th posts stated that DHS would assess fees under Section 1815 to "[a]menable aliens—individuals 14 years or older who entered the U.S. illegally without inspection or admission and are deemed inadmissible."[7] The announcement further stated that the fee "applies: At the time of apprehension, Regardless of location of entry,

---

[4] U.S. Border Patrol Del Rio Sector, Facebook, *Effective Immediately, DHS Will Apply a $5,000 Inadmissible Alien Apprehension Fee to Be Paid by the Alien at the Time of Arrest* [Video] (Sep. 24, 2025), https://www.facebook.com/USBPDelRioSector/videos/effective-immediately-dhs-will-apply-a-5000-inadmissible-alien-apprehension-fee-/1215374560711446.

[5] usbpchiefrgv, Instagram, *NEW DHS GUIDANCE UNDER OBBBA!* [Video] (Sep. 26, 2025), https://www.instagram.com/reel/DPEaDQ8kZQt/?utm_source=ig_web_copy_link; US Border Patrol RGV Sector, Facebook, *Effective Immediately, DHS Will Apply a $5,000 Inadmissible Alien Apprehension Fee to Be Paid by the Alien at the Time of Arrest* [Video] (Sep. 26, 2025), https://www.facebook.com/USBPChiefRGV/videos/new-dhs-guidance-under-obbba/2833821603473165/.

[6] *Id.*

[7] *Id.*

Regardless of time spent in the U.S., Regardless of immigration processing status."[8] The announcement concluded that, "This policy reinforces border enforcement and applies to each apprehension event."[9]



usbpchiefrgv and borderpatrol Follow

NEW DHS GUIDANCE UNDER OBBBA!

Effective immediately, the U.S. Department of Homeland Security (DHS) will assess a $5,000 Apprehension Fee to any inadmissible alien apprehended between ports of entry, as mandated by Section 100017 of the One Big Beautiful Bill Act (OBBBA), codified at 8 U.S.C. § 1815.

👤 Who is subject to this fee?
Amenable aliens—individuals 14 years or older who entered the U.S. illegally without inspection or admission and are deemed inadmissible.

📍 This fee applies:
- At the time of apprehension
- Regardless of location of entry
- Regardless of time spent in the U.S.
- Regardless of immigration processing status

💵 Fee amount: $5,000 (or higher if set by DHS rulemaking)

This policy reinforces border enforcement and applies to each apprehension event. For full legal details, refer to 8 U.S.C. § 1815.

DHS #ImmigrationPolicy #BorderSecurity #OBBBA...

September 26, 2025

[8] *Id.*

[9] *Id.*

43. On information and belief, in September 2025, Defendants began using DHS Form 1815, titled "Notice of Fee Assessment Under 8 U.S.C. § 1815" (hereinafter, "Form 1815"). Both CBP and ICE use Form 1815.

44. The Form 1815 states that it "provides notice of the following determinations: You are not a citizen or national of the United States, You have been apprehended by the U.S. Department of Homeland Security between ports of entry, and You are inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)." The Form 1815 further states, "Based on the foregoing, under 8 U.S.C. § 1815, you are required to pay a fee in the amount of $5,000 [or $5,130]. **Payment in full is due now.**" (Empasis in original.)

45. The Form 1815 also provides for certain actions DHS may take if the fee recipient "fail[s] to promptly pay," including referring the purported debt for collection by the Department of Treasury, Department of Justice, or a private collection agency; collecting by "administrative offset of any eligible Federal and State payments;" reporting the purported "indebtedness to national credit bureaus;" and taking the purported debt into consideration "in future immigration-related proceedings, including admissibility determinations."

46. Recipients of the fee may file a dispute "within 30 days from the date of the issuing immigration officer's signature" on the Form 1815 by submitting a dispute to an email address managed by Defendant CBP, INAfees@cbp.dhs.gov. Form 1815 does not provide for a specific process by which such disputes are adjudicated.

47. On December 4, 2025, Defendant CBP reiterated, in a social media post to the official X account for U.S. Border Patrol, that fees under Section 1815 apply to all noncitizens

who entered without inspection, "regardless of where they entered, how long they've been in the U.S., their current location, or any ongoing immigration proceedings."[10]



Post

Chief Rosario "Pete" Vasquez
@USBPChief

X.com

Under 8 USC §1815, all illegal aliens age 14 or older who entered the United States without inspection will be assessed a $5,000 apprehension fee.
In addition, violations under 8 USC §2339 and 8 USC §1324 will also apply.

This message applies to all illegal aliens—regardless of where they entered, how long they've been in the U.S., their current location, or any ongoing immigration proceedings.



48. Defendants assess fees under Section 1815 retroactively and contrary to the plain text of the statute, pursuant to the Fine Everyone Policy.

---

[10] Chief Rosario "Pete" Vasquez (@USBPChief), X, *Under 8 USC §1815, All Illegal Aliens Age 14 or Older Who Entered the United States Without Inspection Will Be Assessed a $5,000 Apprehension Fee* (Dec. 4, 2025), https://x.com/USBPChief/status/1996671005251543427.

49. Defendants issue Section 1815 fees to noncitizens who entered the United States prior to the July 4, 2025, enactment of H.R. 1. This retroactive application of Section 1815 is unlawful. "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf*, 511 U.S. at 265. Retroactive application of laws raises numerous concerns, including that they can be used "as a means of retribution against unpopular groups of individuals." *Id.* at 266. Thus, "[s]tatutes are disfavored as retroactive when their application 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Landgraf*, 511 U.S. at 280)). "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen*, 488 U.S. at 208 (citations omitted).

50. Nothing in Section 1815's text warrants retroactive application; Defendants' policy and practices are therefore unlawful.

51. Congress could have chosen to make Section 1815 retroactive but did not do so. It knew how to do so, given that it expressly included a retroactivity provision in another section of the same bill. *See* H.R. 1, Pub. L. No. 119-21, § 70302(f)(1), 139 Stat 72, 194 (2025) ("Election for Retroactive Application by Certain Small Businesses"). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Rusello v. United States*, 464 U.S. 16, 23 (1987); *accord INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987); *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002). The absence of any retroactivity provision in H.R. 1, Section 100017 was thus intentional.

52. Tellingly, DHS has already stated that it does not believe retroactivity is appropriate in the context of another new civil immigration fee created by H.R. 1, the 8 U.S.C. § 1814 ("Section 1814") fee, for noncitizens ordered removed *in absentia* who are subsequently arrested by ICE. In a May 20, 2026, Notice of Proposed Rulemaking, DHS noted:

> DHS does not believe that Congress intended for collection of the fee proposed under this NPRM to be retroactively applied to aliens who have been arrested or removed in absentia prior to the enactment of HR-1. An agency generally may not implement a rule with retroactive effect. There is a presumption against retroactivity such that "we 'read laws as prospective in application unless Congress has unambiguously instructed' otherwise." *See Cox v. Kijakazi*, 77 F.4th 983, 991 (D.C. Cir. 2023) (quoting *Vartelas v. Holder*, 566 U.S. 257, 266 (2012)).

*Increasing the Fee for Certain Aliens Ordered Removed in Absentia as Established by the HR-1 Reconciliation Bill*, 91 Fed. Reg. 29380, 29384 n.47 (May 20, 2026).

53. In its May 20, 2026, Notice of Proposed Rulemaking, DHS explained that fees collected pursuant to Section 1814 serve as "partial reimbursement to the government for the cost of the arrests." 91 Fed. Reg. at 29381. Both Sections 1814 and 1815 direct that fifty percent of the fees collected pursuant to each statute be credited to ICE and deposited into its Detention and Removal Office Fee Account. 8 U.S.C. §§ 1814(d)(1), 1815(c)(1).

54. Sections 1814 and 1815 both establish fees intended to partially reimburse DHS for the cost of certain immigration activities. The presumption against retroactivity attaches to Section 1815 just as it does to Section 1814.

55. If Section 1815 were intended to apply retroactively, it would be unconstitutional. It would apply "new legal consequences," a fee, to "events completed before its enactment"—apprehensions or entries occurring before July 4, 2025. *See Landgraf*, 511 U.S. at 270. In other words, it would attach liability to past conduct. *Id.* at 280. Retroactive application would be fundamentally unfair: noncitizens would be fined for past conduct that they have no ability to

change, meaning that they would have no way to avoid the fee. *See id.* at 265. Because fees imposed for pre-July 4, 2025, apprehensions or entries would punish conduct that had already occurred, retroactive application would serve no deterrent or otherwise rational purpose. *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17–18 (1976). Because such an interpretation of Section 1815 would raise significant constitutional problems, it must be presumed that Congress did not intend for the provision to apply retroactively. *See Clark v. Martinez*, 543 U.S. 371, 381 (2005).

56. Defendants have failed to offer any explanation for the decision to assess fees under Section 1815 against noncitizens who entered the United States before July 4, 2025, making the Fine Everyone Policy arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56–57 (1983). Notably, neither of the regulatory notices issued by Defendants regarding Section 1815 fees contains any explanation for retroactive application. *See* 90 Fed. Reg. 52425; 90 Fed. Reg. 43223. This omission is particularly glaring in light of Defendants' May 20, 2026, Notice of Proposed Rulemaking stating that Section 1814 fines may not be imposed retroactively. 91 Fed. Reg. at 29384 n.47.

**II. The Fine Everyone Policy Is Unlawful Under the Plain Meaning of Section 1815.**

57. When a statute does not define a term, the starting point for interpretation is the ordinary, common-sense meaning of the text. *See, e.g.*, *Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."); *Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning" at the time Congress enacted the statute); *Burns v. Alcala*, 420 U.S. 575, 580–81 (1975) (referencing the "axiom that words used in a statute are to be given their ordinary meaning in the absence of persuasive reasons to the contrary").

58. In order to apply Section 1815, three elements must be met: (a) the individual subject to the fee must be "inadmissible"; (b) the fee must be assessed "at such time [the noncitizen] is apprehended"; and (c) the individual must be "apprehended between ports of entry."

59. Inadmissibility is determined at the time of entry into the United States. The Immigration and Nationality Act (the "INA"), namely 8 U.S.C. § 1182, "sets the boundaries of admissibility" for noncitizens "in the process of gaining entry (or admission)" into the United States. *See Trump v. Hawaii*, 585 U.S. 667, 695 (2018). A noncitizen is deemed inadmissible if they "are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a).

60. "Apprehension" means "seizure in the name of the law; arrest." *Apprehension*, *Black's Law Dictionary* (12th ed. 2024); *see also Apprehension*, Merriam-Webster's Dictionary Online ("seizure by legal process: arrest").[11] Defendants define "apprehension events"[12] to include not only instances of arrests but seemingly any interaction with noncitizens, thereby assessing Section 1815 fees in a manner that violates the plain text of the statute.

61. While neither the INA nor Section 1815 defines the phrase "between ports of entry," it is commonly understood to refer to the border of the United States. *E.g.*, *Legal Authority for the Border Patrol*, CBP, (Feb. 12, 2026), https://www.help.cbp.gov/s/article/Article-1253?language=en_US (describing CBP as "responsible for securing the U.S. border between the

[11] *Apprehension*, Merriam-Webster.com Dictionary (last visited Aug. 27, 2026), https://www.merriam-webster.com/dictionary/apprehension.

[12] *See* US Border Patrol RGV Sector, Facebook, *Effective Immediately, the U.S. Department of Homeland Security (DHS) Will Assess a $5,000 Apprehension Fee* [Video] (Sep. 26, 2025), https://www.facebook.com/USBPChiefRGV/videos/new-dhs-guidance-under-obbba/2833821603473165/.

ports of entry"); Proclamation No. 10773, 89 Fed. Reg. 48487 (June 3, 2024) (defining the term "encounter" based on physical apprehension "immediately after entry between ports of entry").

62. Except for international airports, designated "ports of entry" are found along the border or coasts of the United States—not in the interior of the country. An individual apprehended "between" ports of entry, therefore, must be located between designated ports of entry along the border of the United States. "Numerous laws presuppose the existence of definite points of entry, to allow for lawful travel and commerce and to maintain orderly operations at our borders. . . . Designating all (or none) of the border as a place of entry would be in obvious tension with various statutory provisions, making them superfluous or difficult to comprehend." *United States v. Melgar-Diaz*, 2 F.4th 1263, 1268–69 (9th Cir. 2021); *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 98 (2d Cir. 2026) (Cabranes, J., concurring) ("Long-settled case law says that 'inspection' ordinarily takes place at a port of entry, not outside a Home Depot in Massachusetts."); *Greene v. United States*, 94 F. Supp. 666, 666–67 (Ct. Cl. 1951) (defining the duties of border patrol as to "patrol the border between ports of entry for the purpose of preventing illegal entry of [noncitizens].").

63. Indeed, President Trump has used the phrase "between ports of entry" to refer specifically to the border of the United States. *See* Proclamation Number 9822*, Addressing Mass Migration Through the Southern Border of the United States*, 83 Fed. Reg. 57661, 57662 (Nov. 9, 2018) ("The entry of large numbers of [noncitizens] into the United States unlawfully between ports of entry on the southern border is contrary to our national interest, and our law has long recognized that aliens who seek to lawfully enter the United States must do so at ports of entry.").

64. DHS can only assess the fee "*at the time* such [noncitizen] is apprehended between ports of entry." 8 U.S.C. § 1815(a) (emphasis added).

65. Section 1815's plain text therefore restricts DHS's issuance of fees both temporally and geographically. The statute allows for imposition of fees only at "such time [a noncitizen] is apprehended between ports of entry," meaning contemporaneously with a noncitizen's arrest at the border.

66. Based on the plain language of Section 1815, Defendants' issuance of fees to noncitizens deemed inadmissible at the time of entry, other than at the time such person is apprehended upon entry, is contrary to the statute. Yet, pursuant to the Fine Everyone Policy, Defendants assess the fee against noncitizens at scheduled check-ins with ICE or at other interactions in the interior of the country long after the noncitizens were stopped and arrested while entering the United States and then released—in some cases, years later. Defendants also apply Section 1815 to noncitizens who were not apprehended between ports of entry at all, but rather who have their initial interaction with immigration officials in the interior of the United States. Both applications of Section 1815 are contrary to the plain text of the statute.

67. No authority permits Defendants to assess fees under Section 1815 against noncitizens who are apprehended at a workplace or any other location far from the border, or to assess fees under Section 1815 to a noncitizen during a scheduled check-in at an ICE field office. Section 1815 is intended to "reinforce border enforcement"[13] by imposing a fee on noncitizens arrested by Defendants while attempting to clandestinely cross the border.

[13] usbpchiefrgv, Instagram, *NEW DHS GUIDANCE UNDER OBBBA!* [Video] (Sep. 26, 2025), https://www.instagram.com/reel/DPEaDQ8kZQt/?utm_source=ig_web_copy_link; US Border Patrol RGV Sector, Facebook, *Effective Immediately, the U.S. Department of Homeland Security (DHS) Will Assess a $5,000 Apprehension Fee* [Video] (Sep. 26, 2025), https://www.facebook.com/USBPChiefRGV/videos/new-dhs-guidance-under-obbba/2833821603473165/.

68. Defendants have failed to offer any explanation for the decision to assess fees under Section 1815 against noncitizens at any time other than concurrent with their apprehension while entering the United States, making the Fine Everyone Policy arbitrary and capricious. *State Farm*, 463 U.S. at 56–57. Notably, neither of the regulatory notices issued by Defendants regarding Section 1815 fees contains any explanation for assessment against noncitizens at any time other than concurrent with their apprehension while entering the United States. *See* 90 Fed. Reg. 52425; 90 Fed. Reg. 43223.

## III. Defendants Applied the Fine Everyone Policy to Plaintiffs by Assessing Fees Years After Plaintiffs Entered the Country.

***Plaintiff E.R.***

69. Plaintiff E.R. entered the United States along the southern border in 2015. Defendants did not apprehend, detain, or fine Plaintiff E.R. at the time he entered the United States.

70. Shortly thereafter, he moved to Maryland.

71. In April 2026, ICE arrested him in Maryland and assessed a fee in the amount of $5,130 under Section 1815.

72. The fee notice Plaintiff E.R. received contained conclusory, boilerplate allegations regarding his liability for the Section 1815 fine, providing nothing more than three marked checkboxes stating, “You are not a citizen or national of the United States,” “You have been apprehended by the U.S. Department of Homeland Security between ports of entry,” and “You are inadmissible under INA § 212(a), 8 U.S.C. § 1182(a).”

73. The notice stated: “**Payment in full is due now**” and “**Failure to promptly pay this debt has consequences**.” (Emphasis in original.)

74. The notice stated that Plaintiff E.R. may “file a written dispute of this Notice within 30 days from the date of the issuing immigration officer’s signature listed below” and provided an

email address to which to direct any such dispute, but did not otherwise explain how to dispute the fee.

75. Plaintiff E.R. filed an appeal contesting the Section 1815 fee on the basis that the imposition of the fee violated Plaintiff E.R.'s constitutional rights and the plain language of the statute. He requested all evidence relevant to the decision to impose the fee.

76. Defendants have not issued a decision on E.R.'s dispute.

77. If Plaintiff E.R. does not pay the $5,130 fee, he faces the risk of future enforcement targeting his income and assets and/or future adverse admissibility determinations.

***Plaintiff L.C.***

78. Plaintiff L.C. entered the United States along the southern border in 2023, at which time she was apprehended and briefly detained. Defendants did not fine Plaintiff L.C. at that time.

79. ICE released L.C. on her own recognizance and granted her parole into the country on certain conditions, including that she notify ICE of her address and report for appointments as directed by ICE.

80. L.C. has applied for asylum on her own behalf and has also submitted a petition as a beneficiary of her husband's grant of asylum.

81. Since ICE granted L.C. parole, she has reported regularly to ICE and informed ICE of her whereabouts.

82. In July 2026, Defendants sent L.C. a "Notice of Fee Assessment Under 8 U.S.C. § 1815" via first class mail, which she received at her address in Maryland.

83. The fee notice L.C. received contained conclusory, boilerplate allegations regarding her liability for the Section 1815 fine, providing nothing more than three marked checkboxes stating, "You are not a citizen or national of the United States," "You have been apprehended by

the U.S. Department of Homeland Security between ports of entry," and "You are inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)."

84. The notice stated: "**Payment in full is due now**" and "**Failure to promptly pay this debt has consequences**." (Emphasis in original.)

85. The notice stated that Plaintiff L.C. may "file a written dispute of this Notice within 30 days from the date of the issuing immigration officer's signature listed below" and provided an email address to which to direct any such dispute, but did not otherwise explain how to dispute the fee.

86. Plaintiff L.C. filed an appeal contesting the Section 1815 fee, objecting that the imposition of the fee violated Plaintiff L.C.'s constitutional rights and the plain language of the statute. She requested all evidence relevant to the decision to impose the fee.

87. Defendants have not issued a decision on L.C.'s dispute.

88. If Plaintiff L.C. does not pay the $5,130 fee, she faces the risk of future enforcement targeting her income and assets and/or future adverse admissibility determinations.

***Plaintiff N.Q.***

89. Plaintiff N.Q. entered the United States along the southern border in 2023. Defendants did not apprehend, detain, or fine Plaintiff N.Q. at the time he entered the United States.

90. Shortly thereafter, he moved to Maryland.

91. In April 2026, he was arrested by ICE in Maryland and thereafter released on his own recognizance.

92. On the same date as the arrest, Defendants assessed a fee in the amount of $5,130 under Section 1815.

93. The fee notice Plaintiff N.Q. received contained conclusory, boilerplate allegations regarding his liability for the Section 1815 fee, providing nothing more than three marked checkboxes stating, "You are not a citizen or national of the United States," "You have been apprehended by the U.S. Department of Homeland Security between ports of entry," and "You are inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)."

94. The notice stated: "**Payment in full is due now**" and "**Failure to promptly pay this debt has consequences**." (Emphasis in original.)

95. The notice stated that Plaintiff N.Q. may "file a written dispute of this Notice within 30 days from the date of the issuing immigration officer's signature listed below," and provided an email address to which to direct any such dispute, but did not otherwise explain how to dispute the fine.

96. Plaintiff N.Q. disputed the Section 1815 fee. In his appeal, N.Q. contested the fee on the basis that Section 1815 had been improperly applied against him, Defendants had not satisfied the requisite burden of proof, and assessment of the fee violated his due process rights. He requested all evidence relevant to the decision to impose the fee.

97. Defendants have not issued a decision on N.Q.'s dispute.

98. If Plaintiff N.Q. does not pay the $5,130 fee, he faces the risk of future enforcement targeting his income and assets and/or future adverse admissibility determinations.

***Plaintiff L.R.***

99. Plaintiff L.R. entered the United States in Arizona in 2022.

100. Upon entering the United States in 2022, Plaintiff L.R. was apprehended, detained, and paroled into the United States. Defendants did not fine L.R. at that time.

101. L.R. was enrolled in the Alternatives to Detention ("ATD") program and has duly attended check-ins with ICE as requested.

102. After L.R. was released, he relocated to Virginia and informed ICE of his new address.

103. In 2023, L.R. applied for asylum and withholding of removal. Those applications are still pending.

104. In January 2026, L.R. attended a check-in with ICE in Virginia, where ICE served him with a Notice to Appear and issued him a $5,130 fee under 8 U.S.C. § 1815.

105. The fee notice alleges the following: "You are not a citizen or national of the United States, You have been apprehended by the U.S. Department of Homeland Security between ports of entry, and You are inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)." It concludes: "Based on the foregoing, under 8 U.S.C. § 1815, you are required to pay a fee in the amount of $5,130."

106. The notice stated: "**Payment in full is due now**" and "**Failure to promptly pay this debt has consequences**." (Emphasis in original.)

107. The notice stated that Plaintiff L.R. may "file a written dispute of this Notice within 30 days from the date of the issuing immigration officer's signature listed below," and provided an email address to which to direct any such dispute, but did not otherwise explain how to dispute the fine.

108. L.R. submitted an appeal, arguing that the fee was applied retroactively in his case, ICE had not met its burden of proof to establish the lawfulness of the fee, and the fee violated his due process rights.

109. Defendants have not issued a decision on L.R.'s dispute.

110. Following the January 2026 ICE check-in, L.R. has continued reporting to ICE, as required.

111. If Plaintiff L.R. does not pay the $5,130 fee, he faces the risk of future enforcement targeting his future income and assets and/or future adverse admissibility determinations.

***Plaintiff G.G.***

112. Plaintiff G.G. entered the United States along the southern border in 2022.

113. Upon entering the United States in 2022, Plaintiff G.G. was detained by immigration authorities and released on recognizance pursuant to several conditions, including electronic monitoring. DHS did not fine Plaintiff G.G. at that time.

114. ICE placed G.G. on an order of supervision, which required that he periodically report to ICE and comply with certain conditions of release. Among those conditions, G.G. was ordered to obtain permission from ICE before changing addresses, to refrain from certain prohibited conduct, and to assist ICE in obtaining any necessary travel documents. G.G. was also enrolled in the ATD program.

115. Thereafter, G.G. moved to New York and applied for asylum and withholding of removal.

116. G.G. informed ICE of his whereabouts, reported as required, and complied with all conditions of his release.

117. In November 2025, although he had complied with his release conditions, he was arrested by ICE in New York, New York.

118. A federal court held that Defendants unlawfully detained G.G. and therefore ordered him released.

119. At the time of his detention, Defendants assessed G.G. a fee in the amount of $5,000 under Section 1815.

120. The fee notice Plaintiff G.G. received contained conclusory, boilerplate allegations regarding his liability for the Section 1815 fee, providing nothing more than three marked checkboxes stating, "You are not a citizen or national of the United States," "You have been apprehended by the U.S. Department of Homeland Security between ports of entry," and "You are inadmissible under INA § 212(a), 8 U.S.C. § 1182(a)." It concludes: "Based on the foregoing, under 8 U.S.C. § 1815, you are required to pay a fee in the amount of $5,000."

121. The notice stated: "**Payment in full is due now**" and "**Failure to promptly pay this debt has consequences**." (Emphasis in original.)

122. The notice stated that Plaintiff G.G. may "file a written dispute of this Notice within 30 days from the date of the issuing immigration officer's signature listed below," and provided an email address to which to direct any such dispute, but did not otherwise explain how to dispute the fee.

123. Plaintiff G.G. filed an appeal contesting the Section 1815 fee on the basis that the imposition of the fee violated his constitutional rights and the plain language of the statute. He also provided information regarding his individualized circumstances, including significant personal hardship and inability to pay the fee.

124. In March 2026, Defendant ICE rejected Plaintiff G.G.'s appeal and affirmed the $5,000 penalty on the basis that Plaintiff G.G. was "apprehended between ports of entry, at or near New York, New York, on or about November 12, 2025." The decision informed G.G. that if he did not "wish to enter a payment plan or pay the fee in a lump sum," Defendant CBP would "continue collection activity on [his] debt as stated in the Notice of Fee Assessment."

125. If Plaintiff G.G. does not pay the $5,000 fee, he faces the risk of future enforcement targeting his future income and assets and/or future adverse admissibility determinations.

**CLASS ACTION ALLEGATIONS**

126. Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated. Plaintiffs seek to certify two classes of similarly situated people (the "Classes"):

(1) All individuals subjected to a fee under Section 1815 who entered the United States before July 4, 2025 (the "Retroactivity Class");

(2) All individuals subjected to a fee under Section 1815 at any time other than concurrent with their apprehension while entering the United States (the "Away from Border Class").

127. Plaintiffs L.C. and L.R. also seek to represent a Subclass of all individuals assessed a fee under Section 1815 other than at the time of their arrest ("Non-Arrest Subclass").

128. The two Classes and Subclass overlap in that Defendants have assessed fees against many individuals under Section 1815 who both entered the United States and were apprehended and released before July 4, 2025, and against many individuals who both entered the United States before July 4, 2025, and were apprehended after July 4, 2025, in the interior of the United States, far from ports of entry along the borders.

129. Upon information and belief, the Classes consist of hundreds, if not thousands, of individuals. In October 2025, the month immediately following Defendants' announcement that they would begin imposing Section 1815 fees, 90 Fed. Reg. 43223, public reporting had already identified ten teenagers in a single state who had been assessed a fee.[14] The number of individuals

[14] Isabelle Taft, *Homeland Security Is Billing Immigrant Kids $5,000*, N.Y. Focus (Oct. 24, 2025), https://nysfocus.com/2025/10/24/big-beautiful-bill-immigrant-children-fine.

impacted by Defendants' policy and practice has dramatically increased since then. A class action is therefore the only practicable means by which Plaintiffs and Class Members can challenge Defendants' actions.

130. There are multiple questions of law and fact common to all Class Members, including whether Section 1815 may be applied retroactively and whether Section 1815 may be applied against individuals who were assessed fees at any time other than concurrent with their apprehension while entering the United States between ports of entry.

131. Plaintiffs' claims are typical of the claims of the two Classes and the Subclass. That typicality stems from the fact that Defendants broadly impose Section 1815 fees retroactively against individuals who entered the United States before the enactment of H.R. 1 on July 4, 2025, against individuals other than at the time of their apprehension, and against individuals other than concurrent with their apprehension while entering the United States between ports of entry. Plaintiffs, like members of the two Classes and the Subclass, all received fees under Section 1815 despite entering the United States before July 4, 2025. All Plaintiffs received fees under Section 1815 long after entering the United States, in the interior of the country and away from any port of entry along the borders. And Plaintiffs L.C. and L.R. have claims typical of the Non-Arrest Subclass, as L.C. received a fee notice under Section 1815 via first class mail and L.R. received one at an ICE check-in where he was not arrested, and both L.C. and L.R. received fees long after they were arrested while entering the United States and released. Additionally, Plaintiffs face the same statutory penalty for the same alleged conduct as all Class Members.

132. Plaintiffs, like every other Class Member, are injured by the same conduct—Defendants' unlawfully broad and retroactive Fine Everyone Policy.

133. Plaintiffs will fairly and adequately represent the interests of the Classes. Plaintiffs do not have any conflicts with the unnamed members of the proposed Classes and seek only the same declaratory and injunctive relief as the unnamed Class Members.

134. Plaintiffs and Class Members are represented by attorneys from Public Justice, The Legal Aid Society, and Brown, Goldstein & Levy LLP. Plaintiffs' counsel has extensive experience litigating complex class actions raising claims under the U.S. Constitution and the APA, as well as extensive knowledge of immigration law, the assessment of fines and fees, and the details of Defendants' practices.

135. Defendants have acted and/or failed to act in a manner that applies generally to the Classes and the Subclass as a whole, rendering class-wide declaratory and injunctive relief appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## CLAIMS FOR RELIEF

### COUNT I
**Agency Action Not in Accordance with Law**
**8 U.S.C. § 1815; 5 U.S.C. § 706(2)(A)**
**(Plaintiffs Against All Defendants)**

136. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–135.

137. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

138. DHS, ICE, and CBP are each an "agency" under the APA.

139. The Fine Everyone Policy is "final agency action" under the APA.

140. Nothing in the text of Section 1815 suggests or permits retroactive application to individuals who entered the United States prior to July 4, 2025.

141. Defendants' actions are contrary to the plain statutory language in Section 1815, which only applies to individuals at the time they are apprehended between ports of entry.

142. Defendants violate the APA by assessing fees under Section 1815 against individuals who entered the country before the law became effective on July 4, 2025, against individuals at any time other than concurrent with their apprehension while entering the United States, and against individuals other than at the time of their arrest.

143. Therefore, Defendants' policy or practice, as well as the fees issued thereunder, should be vacated and set aside as not in accordance with law. 5 U.S.C. § 706(2)(A).

144. As a direct and proximate result of Defendants' policy or practice, Plaintiffs and all Class Members have suffered and will continue to suffer substantial and irreparable harm and require injunctive relief to prevent continued and future irreparable injury.

**COUNT II**
**Arbitrary and Capricious Agency Action**
**8 U.S.C. § 1815; 5 U.S.C. § 706(2)(A)**
**(Plaintiffs Against All Defendants)**

145. Plaintiffs incorporate by reference the allegations of fact set forth in paragraphs 1–135.

146. Section 706 of the APA provides that courts "shall . . . hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

147. DHS, ICE, and CBP are each an "agency" under the APA.

148. The Fine Everyone Policy is "final agency action" under the APA.

149. Defendants' actions are arbitrary and capricious in light of the statutory language in Section 1815.

150. Defendants violate the APA by assessing fees under Section 1815 against individuals who entered the country before the law became effective on July 4, 2025, against individuals at any time other than concurrent with their apprehension while entering the United States, and against individuals other than at the time of their arrest.

151. Defendants have failed to offer any explanation, in regulatory notices or otherwise, for their decision to assess fees under Section 1815 against individuals who entered the United States before the law was passed and at any time other than the time of apprehension while entering the United States, as required to pass muster under the arbitrary and capricious standard.

152. Among other reasons, the Fine Everyone Policy is arbitrary and capricious because, in adopting it, Defendants have failed to articulate a reasoned explanation for their decision or to consider reliance interests and important aspects of the problem. *See State Farm*, 463 U.S. at 56.

153. Therefore, Defendants' policy or practice, as well as the fees issued thereunder, should be vacated and set aside as arbitrary and capricious. 5 U.S.C. § 706(2)(A).

154. As a direct and proximate result of Defendants' policy or practice, Plaintiffs and all Class Members have suffered and will continue to suffer substantial and irreparable harm and require injunctive relief to prevent continued and future irreparable injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Assume jurisdiction over this matter;

B. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs E.R., L.C., N.Q., L.R., and G.G. as representatives of the Classes, appoint Plaintiffs L.C. and L.R. as representatives of the Subclass, and appoint undersigned counsel as class counsel;

C. Order Defendants to promptly identify all members of the Classes and the Subclass to class counsel and to notify all Class Members (and their attorneys of record, if any) of their status as Class Members in this action;

D. Vacate and set aside Defendants' assessment of fees under Section 1815 against Class Members;

E. Declare Defendants' retroactive assessment of Section 1815 fees unlawful;

F. Declare Defendants' assessment of Section 1815 fees at any time other than concurrent with a noncitizen's apprehension while entering the United States unlawful;

G. Alternatively, declare Defendants' assessment of Section 1815 fees other than at the time of a noncitizen's arrest unlawful;

H. Enjoin Defendants from assessing fees pursuant to Section 1815 to persons who entered the United States before July 4, 2025;

I. Enjoin Defendants from assessing fees pursuant to Section 1815 at any time other than concurrent with a noncitizen's apprehension while entering the United States;

J. Alternatively, enjoin Defendants from assessing fees pursuant to Section 1815 other than at the time of a noncitizen's arrest;

K. Award costs and fees for this action, including attorneys' fees; and

L. Award such further relief as this Court deems just and proper.

Dated: August 31, 2026

Respectfully submitted,

*s/ Evan Henley*
Hasan Shafiqullah (No. 32415)
Evan Henley (No. 32524)
Madeleine Reichman*
The Legal Aid Society
49 Thomas Street, Floor 5
New York, NY 10013
(212) 577-3300
HHShafiqullah@legal-aid.org
EWHenley@legal-aid.org
MReichman@legal-aid.org

*s/ Charles Moore*
Charles Moore (No. 32474)
Ana Builes**
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
(202) 861-5226
cmoore@publicjustice.net
abuiles@publicjustice.net

*s/ Jessica P. Weber*
Jessica P. Weber (No. 17893)
Brown, Goldstein & Levy LLP
120 E. Baltimore St., Suite 2500
Baltimore, MD 21202
(410) 962-1030
jweber@browngold.com

*Counsel for Plaintiffs*

*Motion for admission *pro hac vice* forthcoming
**Application for admission pending